Nicole Owens
Federal Public Defender
John Cacheris
Assistant Federal Defender
Federal Defender Services Of Idaho
702 West Idaho Street, Suite 1000
Boise, Idaho 83702
Telephone: (208) 331-5500
Facsimile: (208) 331-5525

Attorneys for Juan Manuel Rios-Martinez

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

Honorable David C. Nye

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Juan Manuel Rios-Martinez,<br><br>Defendant. | 1:25-cr-00135-DCN<br><br>**Motion for Release** |

## Introduction

This Court should release Juan Manuel Rios-Martinez pending trial. Mr. Rios-Martinez has lived in Idaho for about 20 years. He has a citizen son and granddaughter here as well as a number of siblings. He has held a work permit, a driver's license, and a social security number. He's paid taxes here. He has never missed a criminal court date, never fled from criminal charges, and now faces a minimum term of *zero* years in jail. He's repeatedly returned to the United States after removal and has not abused substances for more than 25 years. Because of all these considerations, this Court can impose release conditions to reasonably assure his appearance. He should be released pending trial.

## Procedural Background

On May 13, 2025, the government filed a one count indictment charging Juan Manuel Rios-Martinez with the crime of deported alien found in the United States. He faces a statutory term of imprisonment of zero to 20 years. Juan was arrested near his home, where he has lived for the past six years, on February 11, 2026.

The government seeks his detention pending trial. This Court found that the government is entitled to a detention hearing on that issue, because it met its burden to show a serious risk of flight. Now, at the detention hearing, the

question is whether there are conditions of release that will reasonably assure his appearance at his court hearings.

## Relevant Background[1]

Juan Manuel Rios-Martinez is a fifty-nine year old widower who lives in Nampa, Idaho. He has strong ties to the United States and this district, limited ability to flee, a good track record for court appearances, and a release plan.

Although he is from Mexico and has some family there, for the past 20 years or so he has lived in Idaho. The most recent six of those years was spent at the same address working for the same employer—CCC Show Horses, in New Plymouth, Idaho—until this arrest. His United States born son, daughter-in-law and granddaughter live in nearby Nampa, Idaho and he sees them most weekends. Juan owns two cars and has an Idaho driver's license.

Juan first came to the United States—specifically, California—when he was around 8 years old. He attended school for many years before dropping out to work. Unlike many other undocumented aliens, Juan has sought legal status through the proper legal channels. Early on, his efforts were successful. For instance, in 2001 a Petition for Alien Relative (I-130) was filed and

[1] Unless otherwise noted, any facts listed here are sourced from the government's A-file, the prior proceedings and information from the defendant. Further, any such facts are admitted solely for the purposes of this Motion. Juan reserves the right to contest any of them at any further proceeding including any hearing on this Motion.

approved for him. In 2002, his application for Employment Authorization Document (I-765) was approved. From this, Juan embedded himself further into the United States by obtaining a social security number.[2] Over the ensuing years he continued to seek legal status, through an attorney. Nevertheless, he appears to have missed his most recent immigration hearing because his attorney withdrew shortly before the hearing and did not tell Juan.

Since coming to the United States over 50 years ago, Juan has been removed or deported to Mexico about four times. Nevertheless, he keeps returning to the United States. He clearly wants to be here.

Juan has a sterling track record of criminal court appearances. He has zero missed court dates, zero fugitive warrants, zero probation violations and zero failures to appear. He has appeared and resolved every single criminal case. Although he had some alcohol related convictions early on, he stopped drinking over 25 years ago.

He is now charged as a deported alien found in the United States. He faces a statutory minimum term of zero years in jail and a likely guidelines range of 4 to 10 months, before pleading guilty or consideration of any § 3553(a)

---

[2] It has been suggested that an alien defendant cannot legally obtain a social security, unless they commit fraud because only United States citizens can obtain a social security number. In fact, the Social Security Administration can issue a social security number to alien defendants under several circumstances. Those include individuals who need to obtain federal benefits or, as in this case, to obtain a work permit. *See*, 20 CFR § 422.104 (a).

factors—one of the lowest possible guidelines sentence range for this type of crime. And he has a release plan to reside with his American-born son, daughter-in-law and granddaughter at their apartment in Nampa, Idaho.

Against this backdrop, Juan respectfully requests this Court order his release.

## Discussion

### I. Juan is eligible for release.

#### A. Legal background.

The government requested a detention hearing and the magistrate court agreed, finding he is "serious risk of flight" under the *Figueroa-Alvarez* and *Santos-Flores* factors governing immigration cases. The issue now is whether the government can meet its burden to establish by a preponderance of the evidence that *no conditions* of release will *reasonably assure* the defendant's appearance in court. 18 U.S.C. § 3142(e); see also, e.g., *United States v. Miramontes-Maldonado*, No. 1:19-CR-00060-BLW, 2019 WL 1560875, at *2 (D. Idaho Apr. 9, 2019) ("so the only question before the Court is whether the Government has proved by a preponderance of the evidence that the Defendant is a serious flight risk and no condition or combination of conditions will reasonably assure that Mr. Miramontes will voluntarily appear. *See United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)"); United States v. Jacinto-Andres, No. 19MJ5796 WQH, 2020 WL 14024086, at *2 (S.D. Cal. Jan. 21,

2020) (finding "that the Government has not carried its burden to show that there are no conditions of release at this time that will adequately assure the Defendant's presence at future proceedings if he is released.").

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Because liberty is the norm, only in "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citations omitted).

Here, the government sought a detention hearing contending Juan is a "serious risk of flight." Although this Court agreed, that did not end the analysis. Now, the government has the burden of establishing by a preponderance of the evidence that no conditions of release will reasonably assure Juan's appearance in court.

In analyzing whether the government has met its burden, the court considers factors such as (1) nature and circumstances of the offense; (2) the weight of the evidence; (3) history and characteristics of the person; and (4) danger to any person or the community if released. 18 U.S.C. § 3142(g). The Court also considers supervised release violations, multiple unlawful entries, prior failures to appear, possession of fraudulent identity documents and the severity of punishment facing the defendant. *United States v. Santos-Flores*,

794 F.3d 1088 (9th Cir. 2015); *Figuero-Alvarez*, 681 F. Supp. at 1139. None of these factors alone is dispositive but are instructive on weighing the totality of the circumstances. *Id.*

**B. Argument.**

**1. Juan faces limited jail time and shows up for court.**

At the outset, it must be remembered that the weight of the evidence is the least important factor to consider. *Figuero-Alvarez,* 681 F.Supp. 3d at 1141; *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). As to likely punishment, Juan does not face a hefty sentence.

Statutorily he faces a minimum term of zero years in jail. When considering the Guidelines, his likely sentencing range is only 4 to 10 months. See, *Figuero-Alvarez*, 681 F. Supp. at 1141 (reviewing the Guidelines under the punishment factor). That is before consideration of any § 3553 factors, which could lower his sentence to zero months of imprisonment. *See, e.g., United States Sentencing Guidelines § 2L1.1,* comment (n. 8); 18 U.S.C. § 3553(a)*; United States v. Booker,* 543 U.S. 220 (2005).

Unlike other "alien defendants facing sentences measured in years," given the short sentence he faces, Juan does not have a great incentive to flee. *Id*. More importantly, he has never fled before. According to the initial pretrial services report, he has no failures to appear, no fugitive warrants, and no probation violations. When facing criminal charges, Juan comes to court. The

most telling datapoint is his track record when he faced a greater likely sentence. In 1991 he was charged a felony hit and run causing death or injury in California, which meant he was facing two to four years in prison. See, *Cal Veh Code* § 20001 (b)(2). Facing those significant consequences, he appeared for court and resolved his case.

**2. Immigration status.**

Juan certainly has a record of prior deportations. Yet, some context is in order.

***First***, this factor should not be overweighted compared to the other factors to consider. See, *Figueroa-Alvarez*, 681 F.Supp.3d at 1141. Instead, an alien defendant's ties to the jurisdiction are the most important factor to consider rather than this factor. *Id.*

***Second***, it fails to consider that Juan has tried to obtain legal status for years. For instance, back in 2012, he successfully applied for an adjustment of his status. In 2014, he applied for asylum and withholding of removal.[3] And when interviewed in 2019 while attempting to cross the border, he advised he was in fear of returning to Mexico over persecution.[4]

---

[3] It appears this application was denied after his attorney withdrew from representation.

[4] This corroborates his assertion he now has dentures because the Mexican mafia beat him and punched out his teeth, which, in turn, could bolster an immigration claim for asylum.

***Finally***, such evidence of his prior deports also cuts in his favor for the question now presented to the Court—whether the government can show that no conditions of release will reasonably assure his appearance in Court. Juan's immigration record shows that conditions will be effective—that he will not flee the country—because it reflects his repeated desire to return to, and remain in the United States.

**3. Community ties and release plan.**

Although Juan has family in Mexio, he has overwhelming and significant ties to the United States and this district.

Several siblings reside in Idaho. He has an Idaho driver's license, a social security number, and has paid taxes. He has two vehicles here, and has worked for the same employer, while living at the same address for the past six years. A "particularly compelling" factor, whether he has "immediate family members" here, "especially children," is also in his favor; Juan's American-born son, Juan, Jr., lives in Nampa, along with his wife and child. *Figueroa-Alvarez*, 681 F.Supp. 3d at 1143.

In fact, Juan proposes to release to Juan Jr.'s residence in Nampa. There, he would live with Juan Jr., and his family. The residence is a two bedroom apartment in Nampa, Idaho. No one is on probation or parole; there are no guns in the residence; and there are dangerous dogs present. To further mitigate risk, Juan is willing to abide by any location monitoring, and curfew.

Given his background in landscaping, he intends to support himself picking up such jobs when he can. Since he can support himself, he has no reason to flee.[5]

On these facts, the government may claim that if Juan is released he could flee. But "mere opportunity to flee is not enough to justify detention," and the Bail Reform Act "does not require ironclad guarantees against flight." *United States v. Himler*, 797 F.2d 156 (3rd Cir. 1986); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992).

Releasing Juan to a residence he shares with his US born son under location monitoring and geographic restrictions is more than a "reasonable assurance" he will come to court—all that is required under the Bail Reform Act. *Id.*

---

[5] The *Figueroa-Alvarez* decision states, "alien defendants cannot lawfully be employed and earn income in the United States" and cites to a federal statute and a federal regulation. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1143 *(*citing, 8 U.S.C. § 1324a (proscribing the employment of unauthorized aliens) and 8 C.F.R. 274a.10(b)(1) (prescribing penalties)). Our courts routinely operate under this premise when ruling on motions for detention in immigration cases. In reality, work status is more nuanced.

The federal statute and regulation cited apply to employers; they do not apply to independent contractors. *See,* 8 C.F.R. § 274a.1(f), (j), (excluding independent contractor from federal definition of employee). So, an illegal immigrant can "work[] for [themselves], and others can contract for [their] services without violating the criminal provisions of immigration laws governing the hiring of illegal immigrants as 'employees' who earn 'wages.' *United States v. Munoz-Correa*, No. 2:23-CR-00302-CW, 2023 WL 5672203, at *4 (D. Utah Sept. 1, 2023).

## Conclusion

For all the foregoing reasons, this Court should find there are conditions of release that will reasonably assure Juan's appearance and release him.

Dated: February, 23, 2026

Nicole Owens
Federal Public Defender
By:

/s/ John Cacheris
John Cacheris
Assistant Federal Defender
Federal Defender Services of Idaho
Attorneys for Juan Rios-Martinez

**Certificate of Service**

I certify that I am an employee of the Federal Defender Services of Idaho, and that a copy of this document was electronically served to the parties below.

Sean Mazorol, Assistant United States Attorney

Dated: February 23, 2026 /s/ Joy Fish
Joy Fish